1  LESLIE R. HOROWITZ (CA SBN 97630)
2  DAVID S. OLSON  (CA SBN 127264)
   CLARK & TREVITHICK
3  800 Wilshire Blvd., 12th Floor
   Los Angeles, CA 90017
4  Telephone: 213-629-5700
   Facsimile: 213-624-0441
5  Email: lhorowitz@clarktrev.com
6  Email: dolson@clarktrev.com
7  Attorneys for Plaintiff
8  Xplor Media Group, Inc.

FILED
CLERK, U.S. DISTRICT COURT

SEP. 9 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

9           UNITED STATES DISTRICT COURT
10          CENTRAL DISTRICT OF CALIFORNIA

11  | XPLOR MEDIA GROUP, INC., | Case No.:  CV-04-894 CBM (CWx) |
12  | | |
    | Plaintiff, | SECOND AMENDED COMPLAINT FOR: |
13  | | |
14  | v. | (1) FEDERAL TRADEMARK INFRINGEMENT; |
15  | VOICE MEDIA INCORPORATED, a | (2) FEDERAL UNFAIR COMPETITION; |
16  | dissolved Nevada corporation; TRADE NEWS N.V., a Netherlands Antilles | (3) STATE TRADEMARK INFRINGEMENT; and |
17  | corporation; INTERNET BUSINESS SERVICES, LLC, a limited liability | (4) UNFAIR BUSINESS PRACTICES |
18  | company; and RON LEVI, an individual, trustee of VOICE MEDIA | [Demand for Jury Trial] |
19  | INCORPORATED. | |
20  | | |
    | Defendants. | |
21  | | |

22
23              **JURISDICTION AND VENUE**
24        1)    This Court has federal question jurisdiction of this case under 28 U.S.C.
25  §§ 1331, 1338(a) & 1338(b) as a matter arising under a federal statute regarding
26  trademarks and under 15 U.S.C. § 1121(a) as a civil action related to infringement of
27  a registered trademark and federal unfair competition.   This Court also has
28  supplemental jurisdiction of related state law claims pursuant to 28 U.S.C.

-1-

1  § 1367(a).

2      2)    Venue is proper in this Court under 28 U.S.C. §§ 1391(b), 1391(c), &

3  1400(a) in that this is the judicial district in which a substantial part of the acts and

4  omissions giving rise to the claims occurred and/or where a defendant resides or

5  may be found.

6                          **THE PARTIES**

7      3)    Plaintiff Xplor Media Group, Inc. ("Xplor" or "Plaintiff") is a

8  corporation organized under the laws of the State of California and at all relevant

9  times qualified to do and doing business in the State of California.

10     4)    Defendant Ron Levi ("Levi") is an individual residing in the State of

11 California in this judicial district.

12     5)    Defendant Voice Media Incorporated ("VMI") was a corporation

13 organized under the laws of the State of Nevada, doing business in the State of

14 California in this judicial district.  During the pendency of this action, on or about

15 April 19, 2004, Defendant VMI dissolved and Defendant Levi succeeded to and

16 assumed all of the rights and liabilities of Defendant VMI asserted in this

17 Complaint as the Trustee of VMI.

18     6)    Defendant Trade News Corporation, N.V. ("Trade News") is a

19 corporation organized under the laws of the Netherlands Antilles doing business in

20 the State of California.

21     7)    Plaintiff is informed and believes that Defendant Internet Business

22 Services, LLC ("Internet Business") is a limited liability company doing business

23 in the State of California in this judicial district.

24     8)    Plaintiff is informed and believes and thereon alleges that Defendant

25 Levi is the alter-ego of Defendant VMI and Internet Business and has acted and

26 operated VMI in a fashion such that any separateness between him and such

27

28

-2-

1   defendants has ceased to exist and there is a complete unity of interest between
2   such defendants.

3       9)      Plaintiff is informed and believe and thereon alleges that at relevant
4   times, each Defendant was the agent, affiliate, officer, director, manager,
5   principal, partner, joint venturer, alter-ego, employee, and/or trustee of the
6   remaining Defendants, acted within the scope of such agency and positions, and
7   actively participated in, ratified, contributed to and/or adopted all of the conduct
8   alleged in this Complaint, with full knowledge of all the facts and circumstances,
9   including, but not limited to, full knowledge of each of the violations of Plaintiff's
10  rights and resulting damages to Plaintiff.

11                      **GENERAL ALLEGATIONS**

12      10)     Plaintiff Xplor is the owner of the trademark HOMEGROWN
13  VIDEO (the "Mark").

14      11)     The goods and services on which the Mark is used include the
15  production and distribution of adult content entertainment for others, and
16  providing adult entertainment in digital form via a global information broadcast
17  network.

18      12)     Xplor has continually used the Mark in commerce with respect to
19  such goods and services since before January 1, 2000 and at all relevant times
20  with respect to the matters alleged in this Complaint.

21      13)     The Mark is currently the subject of a valid and subsisting
22  registration with the United States Patent and Trademark Office which was issued
23  on November 19, 2002 under Serial No. 76343582.

24      14)     On or about June 12, 2008, Xplor timely filed with the United States
25  Patent and Trademark Office a Combined Declaration of Use and Incontestability
26  under Sections 8 & 15 of the Lanham Act.  As a result of such filing, the
27
28

-3-

1    registration has been continued and the Mark has become incontestable as
2    provided in the Lanham Act.

3        15)    New Destiny Internet Group, LLC ("New Destiny") operates an adult
4    website under the domain name www.homegrownvideo.com (the "Homegrown
5    Video Site"). New Destiny is a licensee of adult entertainment content supplied
6    by Xplor and uses the Mark under license in connection with providing this adult
7    entertainment content in digital form on the Homegrown Video Site.

8        16)    On or about January 10, 2000, New Destiny and defendant VMI
9    entered into a written "Website Reseller and Marketing Agreement" (the "WMA
10   Agreement"). Plaintiff was not a party to the WMA Agreement.

11       17)    The WMA Agreement was drafted by defendant VMI.

12       18)    The purpose of the WMA Agreement was, among other things, for
13   defendant VMI to provide "marketing, promotion and e-commerce processing" for
14   the Homegrown Video Site.

15       19)    The marketing and promotion under the WMA Agreement were to
16   operate as follows. Defendant VMI operated a website under the domain name
17   www.cybererotica.com ("the CE Site.") The CE Site amalgamated content and
18   information from several web sites, many of which where owned by defendant
19   VMI, but some of which were owned by third parties like New Destiny. These
20   web sites generated "traffic," *i.e.*, users browsing them over the Internet. It was
21   intended that defendant VMI would direct this traffic to the Homegrown Video
22   Site in order to encourage sign-ups to access the Xplor content made available on
23   the Homegrown Video Site.

24       20)    The "e-commerce processing" function under the WMA Agreement
25   involved credit card payments. Interested users could "sign-up" to become
26   members of a website, including the Homegrown Video Site, by paying a monthly
27   access fee charged against the user's credit card. Defendant VMI was obligated to
28

-4-

1   collect necessary information from the user, process the monthly credit card
2   charges, and remit to New Destiny 50% of the revenues received from so doing
3   after deducting certain costs of marketing, e-commerce processing, webmaster
4   payments, and customer service functions.

5       21)   In accordance with the WMA Agreement, New Destiny created the
6   "Homegrown Video Web Site Tour" (the "Tour") which provided users accessing
7   the Homegrown Video Site with a sample of the content available there.  The Tour
8   used the Mark and content licensed from Xplor.  The Tour was hosted on servers
9   owned or controlled by Defendants.

10      22)   Xplor approved New Destiny's entry into the WMA Agreement with
11  defendant VMI and the use of the Mark and Xplor content in connection with the
12  WMA Agreement, including on the Tour.

13      23)   As a licensor, Xplor was entitled to a royalty based on income New
14  Destiny derived from its use of the Xplor content and the Mark, including under
15  the WMA Agreement.

16      24)   Under the WMA Agreement, Defendant VMI assigned both user
17  names and passwords to users of the Homegrown Site.  Unbeknownst to the
18  Defendants, New Destiny maintained a mirror list of the passwords that had been
19  assigned by VMI.

20      25)   In or around mid 2002, New Destiny began to notice that the
21  payments it was receiving from Defendants did not correspond to the number of
22  users on its password list.  For example, in certain months New Destiny noticed
23  that it had approximately 9,000 "active passwords" on the Homegrown Site, that
24  is, users who were using the passwords assigned to them by Defendants to actively
25  access the Homegrown Video Site and its contents.  However, during those
26  months Defendants were only paying New Destiny for approximately 3,000 active

27

28

-5-

SECOND AMENDED COMPLAINT

1  users. New Destiny called these users who were accessing the Homegrown Site
2  but for which it was not being paid the "missing members."

3      26)   New Destiny initially asked Defendants to explain the reasons for the
4  "missing members," but was given misleading explanations by Defendants about
5  the cause, such as "processing errors" or "bugs." In fact, the explanations were
6  false and were known by Defendants to be false.

7      27)   However, New Destiny did not know the explanations were false at
8  the time but reasonably believed them to be true.

9      28)   In truth and in fact, the reason for the discrepancy was that
10 Defendants were "diverting" user payments due to New Destiny to their own
11 accounts.  That is, Defendants were allowing users access to the Homegrown
12 Video Site, but then billing the users on other websites owned or controlled by
13 Defendants and keeping the payments for themselves.

14     29)   The WMA Agreement gave New Destiny the right to audit the books
15 and records of Defendants with regard to the Homegrown Video Site.

16     30)   In November of 2003, New Destiny gave Defendants notice that it
17 intended to conduct an audit.

18     31)   Defendants, however, refused and have continued to refuse to provide
19 the books and records necessary for New Destiny to conduct an audit and have
20 continually frustrated every attempt to audit.  Instead, Defendants continued their
21 unauthorized diversion of funds to themselves.

22     32)   A preliminary analysis by independent auditors appointed by JAMS,
23 The Resolution Experts,[1] found that, for two months for which Defendants
24 supplied partial records, there was substantial evidence that Defendants were

25
26 _____
27 [1] JAMS holds itself out as having been established in 1979 and being the nation's
28 largest provider of alternative dispute resolution services.

-6-

"diverting" payments to themselves.   Defendants, however, have refused and continue to refuse to provide their books and records necessary to audit or examine other relevant months.

33)    As a result of such conduct, Defendants and each of them have been diverting to themselves income and profits from the use of the Xplor content and Mark on the Homegrown Site that should have been paid to New Destiny and hence to Xplor, thereby unjustly enriching themselves at the expense of Xplor. On information and belief, this diversion has continued throughout the life of the WMA Agreement, from on or about January, 2000 through August, 2006.

34)    Moreover, in or around May of 2002, Defendant VMI purported to assign its rights and delegate its duties under the WMA Agreement to defendants Trade News and Internet Business.  Neither Xplor nor New Destiny were advised about such assignment and delegation, which Defendants concealed from them until on or about November of 2003.

35)    The WMA Agreement says by its terms that neither party may assign its rights or delegate its duties under such agreement without the consent of the other party.

36)    Moreover, the non-exclusive license by Xplor to New Destiny respecting the use of the Mark is not assignable without Xplor's consent as a matter of law.

37)    Xplor did not and does not consent to such assignment and delegation, and, once it learned of the unauthorized assignment and delegation, so informed Defendants.

38)    Nonetheless, despite such notice, Defendants continued to use and to purport to authorize use of the Xplor content and the Mark in commerce without Xplor's consent, in willful violation of Xplor's rights.

SECOND AMENDED COMPLAINT

# FIRST CLAIM FOR RELIEF

## Federal Trademark Infringement - 15 U.S.C. § 1114

### Against Defendants Levi, VMI, Trade News, and Internet Business

39)   Plaintiff Xplor realleges and repleads all the allegations in paragraphs 1-38, inclusive, and all other paragraphs of this Complaint, and incorporate them by reference as if set forth in full.

40)   Plaintiff Xplor and New Destiny by virtue of a license from Xplor, have the exclusive authority to use the Mark in commerce in connection with adult entertainment provided over the Internet.

41)   The WMA Agreement granted defendant VMI a non-exclusive license to use the Mark in creating high quality banner and text links on VMI's CE Site and in hosting the Tour on its servers.  This would identify VMI's CE Site and VMI as an authorized source for gaining access to the Homegrown Site and the goods and services of Xplor.

42)   In or around May of 2002, Defendant VMI purported to assign its rights and delegate its duties under the WMA Agreement to Defendants Trade News and Internet Business.

43)   Xplor did not and does not consent to such assignment and delegation, and so informed Defendants. Xplor did not and does not consent to the use by the defendants other than VMI of its Mark, and so informed Defendants. Nonetheless, Defendants have continued to use and to purport to authorize use of the Xplor content and the Mark in commerce without Xplor's consent.

44)   As a result of such unauthorized assignment of the WMA Agreement, Defendant Trade News began using the Mark.

45)   Defendant Internet Business knowingly contributed to such infringement by acting as an administrator and agent for Defendant Trade News in

-8-

this judicial district and collecting income derived from the unauthorized used of the Xplor content and the Mark.

46)     Defendant VMI authorized, facilitated and contributed to such unauthorized assignment and infringing conduct by Defendants Trade News and Internet Business.

47)     Defendant Levi adopted, ratified, contributed to, and continued such unauthorized assignment and infringing conduct by Defendants Trade News and Internet Business, both individually and as successor to VMI.

48)     Defendants, and each of them, have used such conduct to divert profits derived from users accessing the Xplor content and the Mark to themselves, expropriating to themselves income that should have been paid to New Destiny and Xplor and unjustly enriching themselves at the expense of Xplor.

49)     In January of 2004, in retaliation for the attempt at an audit, Defendants and each of them engaged in a deliberate attempt to disparage the Mark and cause injury to the reputation and good will of Xplor. In particular:

(a)     Defendants began "purging" its database of users by unilaterally canceling the users to whom it had promised "lifetime" or discounted access to the Homegrown Video Site. This was part of another attempt by Defendants to purge the "missing members" from the Homegrown Video Site and continue concealing the diversion of income to themselves.

(b)     Defendants began double-billing other users, *i.e.*, charging then multiple times for monthly membership fees to the Homegrown Video Site.

(c)     Despite their obligation to provide customer support, Defendants ceased responding to e-mails or telephone calls from users complaining about such practices.

-9-

SECOND AMENDED COMPLAINT

50)    This conduct, which is similar to other misconduct perpetrated in the past by Defendants VMI and Levi and which resulted in a consent decree with the FTC, resulted in significant complaints from users of the Homegrown Video Site and materially impaired the good will of Xplor.  Despite demand, Defendants and each of them refused to cease such conduct.

51)    The unauthorized use of the Mark by Defendants, and each of them, in commerce as alleged has caused confusion, or mistake, or deception and constituted infringement of Xplor's rights in the Mark in violation of the Lanham Act § 33, 15 U.S.C. § 1114.

52)    Defendants' infringing conduct as alleged above has been knowing and willful.

53)    As a result of their infringing conduct, Defendants' and each of them have diverted income and profits that should have been earned by Xplor to themselves, unjustly enriching themselves at Xplor's expense.  Defendants should be ordered to provide and submit to a full audit and accounting respecting all profits so derived and Xplor should be allowed to recover Defendants' profits from so doing according to proof at trial.

54)    As a further result of the infringing conduct, Defendants' and each has caused actual injury to Xplor and damaged its good will in an amount to be proven at trial.

55)    Due to the willful nature of Defendants' conduct, it would be fair and equitable to allow Xplor to recover recovery of up to three times the amount of such actual damages as authorized by Lanham Act § 34, 15 U.S.C. § 1117.

56)    Xplor should also be awarded costs, expert fees and attorney's fees as allowed by law.

-10-

## SECOND CLAIM FOR RELIEF

### Federal Unfair Competition - 15 U.S.C. § 1125(a)

### Against Defendants Levi, VMI, Trade News, and Internet Business

57)    Plaintiff Xplor realleges and repleads all the allegations in paragraphs 1-56, inclusive, and incorporates them by reference as if set forth in full.

58)    In addition to the activities incorporated by reference, Defendants and each of them have undertaken the following activities in violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a):

(a)    Defendant Trade News has used the word and symbol "HOMEGROWN VIDEO" on its web site without authorization, including to divert consumers to sites which it owned, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Defendant Trade News with Xplor, or as to the origin, sponsorship, or approval of defendants' commercial activities by Xplor;

(b)    Defendants Levi, VMI, and Internet Business sponsored, contributed to, ratified and endorsed such unauthorized conduct by Defendant Trade News in a manner likely to further confusion, mistake, or deception as to the affiliation, connection, association of approval of Defendants' commercial activities by Xplor.

(c)    In January of 2004, in retaliation for the attempt at an audit, Defendants and each of them engaged in a deliberate attempt to disparage the Mark and cause injury to the reputation and good will of Xplor, including by: (i) unilaterally canceling the users to whom it had promised "lifetime" or discounted access to the Homegrown Video Site without cause; (ii) double-billing other users, *i.e.*, charging then multiple times for monthly membership fees to the Homegrown Video Site; and (iii) ceasing to respond to e-mails or telephone calls from users complaining about such practices.   All this was done as part of a deliberate

-11-

scheme to make it appear that such conduct was sponsored or approved by Xplor and was both likely to and intended to cause confusion, mistake or deception.

59)    Defendants, despite demand, refused to cease such conduct as alleged.

60)    Defendants' unauthorized use of the Mark as alleged and false or misleading representation that they are authorized to perform e-commerce processing for the Homegrown Site has caused confusion, mistake, or deception as to the sponsorship or approval by Xplor of such conduct.

61)    Defendants' unauthorized conduct as alleged above has been knowing and willful.

62)    As a result of their unauthorized and deceptive conduct, Defendants' and each of them have diverted income and profits that should have been earned by Xplor to themselves, unjustly enriching themselves at Xplor's expense. Defendants should be ordered to provide a full audit or accounting of all profits so derived and Xplor should be allowed to recover Defendants' profits from so doing according to proof at trial.

63)    As a further result of their unauthorized and deceptive conduct, Defendants' and each of them has caused actual injury to Xplor and damaged its good will in an amount to be proven at trial.

64)    Due to the willful nature of Defendants' conduct, it would be fair and equitable to allow Xplor to recover recovery of up to three times the amount of such actual damages as authorized by Lanham Act § 34, 15 U.S.C. § 1117.

65)    Xplor should also be awarded costs, expert fees and attorney's fees as allowed by law.

-12-

## THIRD CLAIM FOR RELIEF

### State Law Trademark Infringement - Cal. Bus. & Prof. Code § 14259
### Against Defendants Levi, VMI , Trade News and Internet Business

66)   Plaintiff Xplor realleges and repleads all the allegations in paragraphs 1-65, inclusive, and incorporate them by reference as if set forth in full.

67)   All of the alleged conduct incorporated by reference occurred in California and constitutes a violation of Xplor's rights under California common law and statutory law, including Cal. Bus. & Prof. Code § 14259.

68)   Defendants' infringing conduct as alleged has been knowing and willful.

69)   As a result of their infringing conduct, Defendants' and each of them have diverted income and profits that should have been earned by Xplor to themselves, unjustly enriching themselves at Xplor's expense.  Defendants should be ordered to provide a full audit or accounting of all profits so derived and Xplor should be allowed to recover Defendants' profits from so doing according to proof at trial.

70)   As a further result of the infringing conduct, Defendants' and each has caused actual injury to Xplor and damaged its good will in an amount to be proven at trial.

71)   Due to the willful nature of Defendants' conduct, it would be fair and equitable to allow Xplor to recover recovery of up to three times the amount of such actual damages as authorized by law.

72)   Xplor should also be awarded costs, expert fees and attorney's fees as allowed by law.

-13-

1

**FOURTH CLAIM FOR RELIEF**

2

**Unfair Business Practice - California Business and Professions Code § 17000**

3

*et seq.*

4

**Against Defendants Levi, VMI, Trade News and Internet Business**

5

    73)    Plaintiff Xplor realleges and repleads all the allegations in paragraphs

6

1-72, inclusive, and all other paragraphs of this Complaint, and incorporate them

7

by reference as if set forth in full.

8

    74)    At all relevant times, defendants engaged in a series of unfair acts or

9

practices, as alleged, as those terms are used under the Unfair Practices Act,

10

California Business & Professions Code § 17000, *et seq.*

11

    75)    In addition to the conduct previous alleged and incorporated by

12

reference, Defendants' unfair acts or practices include but are not limited to the

13

following:

14

    (a)    Defendants VMI purported to assign its rights under the WMA

15

Agreement to Defendant Trade News without the consent of Xplor. Defendants

16

Levi, VMI, and Internet Business then sponsored, facilitated, contributed to or

17

ratified such unauthorized assignments, and then Defendants, and each of them,

18

purported to use the Mark and Xplor Content on their web sites without the

19

consent or authorization of Xplor.

20

    (b)    Defendants and each of them entered into a scheme to divert income

21

derived from their unauthorized used the Xplor content and the Mark to

22

themselves by using the Mark and the Xplor content to induce users to sign up for

23

membership on the Homegrown Video Site, collecting payments from users for so

24

doing, and them keeping a substantial portion of such income for themselves.

25

    (c)    In January of 2004, in retaliation for the attempt at an audit,

26

Defendants and each of them engaged in a deliberate attempt to disparage the

27

Mark and cause injury to the reputation and good will of Xplor, including by: (i)

28

-14-

SECOND AMENDED COMPLAINT

unilaterally canceling the users to whom it had promised "lifetime" or discounted access to the Homegrown Video Site without cause; (ii) double-billing other users, *i.e.*, charging then multiple times for monthly membership fees to the Homegrown Video Site; and (iii) ceasing to respond to e-mails or telephone calls from users complaining about such practices. All this was done as part of a deliberate scheme to make it appear that such conduct was sponsored or approved by Xplor and was both likely to and intended to cause confusion, mistake or deception.

76) Defendants engaged in such conduct to assure greater profits to themselves, and in so doing received more remuneration from the unfair practices than if they had treated Xplor fairly and equitably. Xplor is informed and believes in this regard, as an example, that Defendants only paid it for three out of every ten users permitted to access the Homegrown Video Site.

77) Defendants performed or failed to perform the above-referenced acts with total disregard for their impact on Xplor's business or good will. Defendants' activities constituted unfair or fraudulent business acts or practices pursuant to California Business and Professions Code § 17200, et seq.

78) Defendants' unfair or fraudulent business acts or practices as alleged above have been knowing and willful.

79) As a result of their unfair or fraudulent business acts or practices conduct, Defendants' and each of them have diverted income and profits that should have been earned by Xplor to themselves, unjustly enriching themselves at Xplor's expense. Defendants should be ordered to provide a full audit or accounting of all profits arising from their conduct and provide restitution or disgorgement to Xplor all such profits according to proof at trial.

80) As a further result of their unfair or fraudulent business acts or practices conduct, Xplor has been deprived of the patronage of potential

-15-

customers, and has suffered injury to its good will, all to its damage, in an amount to be determined according to proof at the time of trial.

81)   Due to the willful nature of Defendants' conduct, it would be fair and equitable to allow Xplor to recover recovery of up to treble damages as authorized by law.

82)   Xplor should also be awarded costs, expert fees and attorney's fees as allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Xplor prays judgment on all Claims for Relief as follows:

1.   For an audit and accounting to ascertain and disclose the profits derived by Defendants;

2.   For payment of such profits to Xplor according to proof;

3.   For actual damages suffered by Xplor according to proof;

4.   For additional or treble damages as provided by law;

5.   For costs of the suit including expert fees;

6.   For attorneys fees; and

7.   For such other and further relief as the Court deems just and proper.

DATED: July 7, 2008                    Respectfully submitted,

                                       CLARK & TREVITHICK

                                       By: _____
                                          LESLIE R. HOROWITZ
                                          Attorneys for Plaintiff

                                       -16-

                                       SECOND AMENDED COMPLAINT

**DEMAND FOR JURY TRIAL**

Plaintiff Xplor hereby makes this demand for jury trial.

DATED:  July 7, 2008

Respectfully submitted,

CLARK & TREVITHICK

By: _Leslie R. Horowitz_

LESLIE R. HOROWITZ
Attorneys for Plaintiff

-17-